IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

**ENTERED**
**11/02/2007**

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| ADOLPHUS D. PINSON, | ) | CASE NO. 05-38800-H3-7 |
| | ) | |
| Debtor, | ) | |
| | ) | |

MEMORANDUM OPINION

The court has held a hearing on the "Motion to Approve Settlement" (Docket No. 67) filed by Mark Crampton.  The following are the Findings of Fact and Conclusions of Law of the court.  A separate Judgment will be entered granting the motion. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such.  To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

Findings of Fact

Adolphus D. Pinson ("Debtor") filed a voluntary petition under Chapter 13 of the Bankruptcy Code on June 6, 2005. The case was converted to a case under Chapter 7 of the Bankruptcy Code on April 12, 2007.  Joseph M. Hill is the Chapter 7 Trustee.

In the instant motion, Mark Crampton, an attorney hired postpetition by Debtor, seeks approval of a mediated settlement of claims filed by Debtor against his insurance company with

respect to "water intrusion and subsequent mold infestation and contamination" which damaged Debtor's home during 2002.  The motion is opposed by Debtor and by the Chapter 7 Trustee.

On August 29, 2005, Debtor filed amended schedule B. Debtor's assets, as listed in amended schedule B, did not include any claims for damage to his home.  (Docket No. 13).  Debtor did not list a potential claim in his original statement of financial affairs.  (Docket No. 1).

On October 11, 2005, one day prior to a scheduled hearing on confirmation of Debtor's plan, Debtor amended the statement of financial affairs to list the pending suit against Debtor's insurance company, USAA.

On October 12, 2005, the court held a confirmation hearing on Debtor's Chapter 13 plan.  At the hearing, the court required, in order to satisfy the confirmation standards, that the plan be amended to provide that any proceeds payable to Debtor in any settlement of Debtor's suit be dedicated to payment of claims until unsecured creditors were paid in full.

The amended plan, which was filed October 26, 2005, provided in pertinent part that the property of the estate would vest in Debtor upon Debtor's receiving a discharge or the dismissal of the case, and that "[p]ursuant to an agreement between the debtor and trustee, the debtor will pay all secured

claims upon receiving insurance settlement 100%."[1]   (Docket No.
21).  The amended plan was confirmed, by order entered November
3, 2005 (Docket No. 23).

On April 5, 2006, Debtor, Debtor's wife, Crampton, and
a representative of USAA mediated Debtor's disputes with USAA.  A
"Mediation Agreement," providing for settlement of the disputes
among the parties, was signed by Crampton, Debtor, Debtor's wife,
counsel for USAA, and a representative of USAA.

On April 12, 2006, an application to employ Crampton,
to represent Debtor with respect to the claims, was filed.[2]  In
the initial application to employ, Crampton asserted that Debtor
had engaged Crampton as counsel on July 18, 2005, and that
Crampton had filed suit in state court, on behalf of Debtor,
against USAA.  (Docket No. 25).  The application was denied, for
the reason that the proposed agreement appeared to give Crampton
the power to veto a settlement.  (Docket No. 26).

On May 22, 2006, an amended application[3] to employ
Crampton was filed.  The amended application provided for
Crampton to represent Debtor on a 40 percent contingent fee

---

[1]It appears that the word "secured" in the quoted portion of
the plan was an error, because the court ordered that all
unsecured claims be paid in full.

[2]The court notes that, although Debtor was represented in
the bankruptcy case by Roderick Arnic, the application was not
signed by Arnic or by Debtor, but only by Crampton.

[3]The amended application also was not signed by Arnic or by
Debtor, but only by Crampton.

basis.  The employment agreement attached to the amended
application provides that Debtor grants Crampton a lien on the
proceeds of the cause of action as security for the payment of
attorney fees.  (Docket No. 28).  The amended application was
granted, without a hearing, by order entered June 12, 2006
(Docket No. 32).  In the amended application, Crampton asserted
that Debtor and Crampton had amended their contract on or about
May 19, 2006.

Crampton did not disclose, when filing either the
initial application or the amended application, that the
mediation had already taken place, and that he had negotiated a
settlement of the matter.

On April 12, 2007, Debtor filed a notice of voluntary
conversion of the instant case to a case under Chapter 7 of the
Bankruptcy Code.  (Docket No. 50).

On April 24, 2007, Debtor filed amended schedules.
Debtor's schedules did not include a listing of the damage
claims.  (Docket No. 51).

On June 21, 2007, Debtor again amended the schedules.
In the amended schedule B filed June 21, 2007, Debtor listed as
an asset "Proceeds from lawsuit," with a value of $25,000.
Debtor claimed those proceeds as exempt.  (Docket No. 58).
Neither Trustee nor any other party in interest has objected to
Debtor's exemptions.

4

On August 23, 2007, Crampton filed the instant motion. In the motion, Crampton asserts the Mediation Agreement provides for USAA to pay $75,000, of which $31,500 was to be paid to Crampton, $25,000 to Debtors for the contents of their home, and $18,500 to Debtors for their mortgage.  The Mediation Agreement provided that Debtors' attorney (identified in the agreement as Crampton) was responsible for obtaining approval from the bankruptcy court.

In the instant motion, Crampton seeks approval of the settlement.  Crampton argues that the settlement is justified, because a certified question of law was pending before the Texas Supreme Court at the time  of the mediation, and the ultimate ruling on the certified question likely would have resulted in summary judgment being granted against Debtor on the claims.[4]

The Chapter 7 Trustee opposes the instant settlement. In his response, the Trustee argues that, on advice of his special counsel, Trustee believes that Debtor's claims against USAA can be distinguished from those in <u>Fiess</u>, and that Debtor and his wife were pressured to accept the settlement.

---

[4]The certified question was whether the ensuing loss provision of the standard HO-B insurance policy  provided coverage for mold contamination caused by water damage that was otherwise covered by the policy.  <u>Fiess v. State Farm Lloyds</u>, 392 F.3d 802 (5th Cir. 2004).  The Texas Supreme Court held that mold was not covered.  <u>Fiess v. State Farm Lloyds</u>, 202 S.W.3d 744 (Tex. 2006).

5

At the hearing on the instant motion, the parties
raised arguments related to the potential effect of the proposed
settlement on claims which remain pending against contractors who
performed the remediation of Debtor's home.  Counsel for Trustee
stated that counsel representing the contractors have asserted as
a defense that Debtor was not in privity with the contractors,
and Trustee thus argues that approval of the proposed settlement
with USAA (which Trustee's counsel argues may have been in
privity with the contractors) could conceivably cut off the
rights of Debtor and the estate to pursue remedies against the
contractors.  Crampton argued that he believes Debtor hired the
contractors directly, and thus the privity argument asserted by
the contractors would fail.

Debtor testified at the hearing on the instant motion
that he was dissatisfied with the proposed settlement, and
expressed dissatisfaction with his contractors.  However, the
court notes that Debtor signed the Mediation Agreement.

<u>Conclusions of Law</u>

The commencement of a chapter 13 case creates an
estate, comprised, with exceptions not pertinent to the instant
case, of all legal or equitable interests of the Debtor in
property.  11 U.S.C. § 541(a).

In Chapter 13, a debtor has, exclusive of the rights of
the Chapter 13 trustee, the rights and powers of a trustee under,

inter alia, Section 363(b) of the Bankruptcy Code.

11 U.S.C. § 1303.  These included the right to seek to employ

Crampton.

Except as otherwise provided in the plan or the order

confirming the plan, the confirmation of a plan vests all of the

property of the estate in the debtor.  11 U.S.C. § 1327(a).

In the instant case, the confirmed plan provided that

the property of the bankruptcy estate was to be vested in Debtor

upon the discharge or dismissal of the case.  The court concludes

that the causes of action against USAA and the contractors

remained property of the bankruptcy estate at the time the case

was converted to Chapter 7.

This determination does not end the inquiry.  The court

must now address the question of what effect to give to the June

21, 2007 amendments to Debtor's schedules.

The Bankruptcy Code allows the debtor to prevent the

distribution of certain property by claiming it as exempt.

Taylor v. Freeland & Kronz, 503 U.S. 638, 112 S.Ct. 1644, 118

L.Ed.2d 280 (1992).

In Taylor, the debtor scheduled "proceeds from lawsuit"

as an asset, and claimed the proceeds as exempt.  The Supreme

Court held that, in the absence of a timely objection by a party

in interest, the exemption was allowed, despite the debtor's lack

of a colorable claim to the exemption.

7

In the instant case, Debtor scheduled $25,000 in lawsuit proceeds, and claimed them as exempt.  No party in interest objected to the exemptions.  The court concludes that the $25,000 in proceeds of the suit against USAA received by Debtor are exempt, and therefore excluded from the estate.

As to the money which Crampton paid to himself from the USAA proceeds, funds that are proceeds of Debtor's property (a lawsuit) are property of the estate even if subject to a claim (even a secured claim) by a nondebtor.  In re Equator Corp., 362 B.R. 326 (Bankr. S.D. Tex. 2007).[5]  The court has not yet been presented or addressed the question of whether Crampton is entitled to an allowed fee.  Moreover, Debtor has not claimed the proceeds paid to Crampton as exempt.

The standards differ for consideration of a proposed compromise as to the portion declared to be exempt (for which the consideration of the estate's interest is not paramount) and the portion not declared to be exempt.  As to the portion which remains property of the estate, in deciding whether to approve a settlement of litigation, the court should consider the terms of the compromise in comparison with the likely rewards of litigation.  The court must evaluate:  1) the probability of success in the litigation, with due consideration for the

---

[5]The court notes that, unlike in Equator Corp., in the instant case, the court approved the attorney's retention as counsel for the Debtor while the Debtor was in Chapter 13.

8

uncertainty in fact and law; 2) the complexity and likely
duration of the litigation and any attendant expense,
inconvenience and delay; and 3) all other factors bearing on the
wisdom of the compromise.  Matter of Cajun Elec. Power
Cooperative, Inc., 119 F.3d 349 (5th Cir. 1997), citing In re
Jackson Brewing Co., 624 F.2d 599 (5th Cir. 1980).

       Under the third "catch-all" provision, the court should
consider the best interests of the creditors, with proper
deference to their reasonable views, and the extent to which the
settlement is truly the product of arms-length bargaining, and
not of fraud or collusion.  In re Foster Mortgage Corp., 68 F.3d
914 (5th Cir. 1995).

       In the instant case, the proposed compromise, although
it was not disclosed when Crampton sought to be employed as
Debtor's counsel, appears to be of benefit to the bankruptcy
estate.  It appears that, through the mediation, Debtor and the
estate were able to accomplish a result which would likely be
unavailable if the positions of the parties were restored to
their state prior to the mediation.  The argument raised by
Trustee as to the impact of the instant settlement on claims
against the contractors is speculative.  Trustee presented no
evidence and presented no legal argument regarding the likelihood
of success of a privity argument, only stating that it had been
raised.  No evidence was presented by Crampton, Debtor, or

9

Trustee regarding the cost of litigation, but this court finds that the likelihood that Debtor's claims would have been disposed of on summary judgment in the absence of approval of the instant compromise is paramount.  The settlement was the result of arms-length bargaining, despite Debtor's subsequent dissatisfaction with the result.

Based on the foregoing, a separate Judgment will be entered granting the "Motion to Approve Settlement" (Docket No. 67) filed by Mark Crampton.

Signed at Houston, Texas on November 2, 2007.

LETITIA Z. CLARK
UNITED STATES BANKRUPTCY JUDGE